UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
SALVATORE L. AZZARA,              :

                                  :

        Plaintiff,         :     CASE NO.: _____

                                    :

    -against-          :     COMPLAINT

                                    :

RESTORBIO, INC., CHEN SCHOR,    :     DEMAND FOR JURY TRIAL
JEFFREY A. CHODAKEWITZ, PAUL    :
FONTEYNE, MICHAEL GRISSINGER,    :
JONATHAN SILVERSTEIN, DAVID    :
STEINBERG, and LYNNE SULLIVAN,    :

                                      :

        Defendants.     :
--------------------------------------- X

Plaintiff Salvatore L. Azzara ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## **NATURE OF THE ACTION**

1.     This is an action brought by Plaintiff against resTORbio, Inc. ("resTORbio" or the "Company") and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with resTORbio, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and for breaching their fiduciary duty of candor under Delaware State law. Plaintiff's claims arise in connection with the proposed merger between the Company and Adicet Bio, Inc. ("Adicet") to be effectuated through a reverse stock split.

2.     On April 28, 2020, resTORbio entered into an Agreement and Plan of Merger (the

"Merger Agreement"). Pursuant to which, the Company will merge with Project Oasis Merger Sub, Inc., a Delaware corporation and a wholly owned subsidiary of resTORbio ("Merger Sub"), in an all-stock transaction. Thereafter, each ordinary share of Adicet capital stock outstanding will be converted into the right to receive approximately 0.8559 shares of resTORbio common stock, subject to adjustment to account for the reverse stock split of within the range between 1-for-4 and 1-for-12 (the "Proposed Transaction").

3.      As a result of the Merger, the former stockholders of Adicet are expected to hold approximately 75% of the outstanding shares of resTORbio common stock on a fully diluted basis, and the current stockholders of resTORbio are expected to hold approximately 25% of the outstanding shares of resTORbio common stock on a fully diluted basis (the "Exchange Ratio").

4.      In addition, the Merger Agreement provides that holders of resTORbio common stock as of immediately prior to the completion of the merger shall be entitled to one contractual contingent value right ("CVR") for each share of resTORbio common stock held by such holder. Each CVR shall entitle the holder to receive net proceeds of the commercialization, if any, received from a third party commercial partner of RTB101, resTORbio's small molecule product candidate that is a potent inhibitor of target of rapamycin complex 1 (TORC1), for a COVID-19 related indication, with clinical data expected by the first quarter of 2021 (the CVR together with the Exchange Ratio, referred to as the "Merger Consideration").

5.      On June 23, 2020, in order to convince resTORbio's public common stockholders to vote in favor of the merger, the Board authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement contains materially incomplete and misleading information concerning: (i) the financial projections prepared by management; (ii) the financial analyses performed by JMP

Securities LLC ("JMP") for use in its fairness opinion; and (iii) the background of the merger.

6.      The shareholder vote will be scheduled in the coming weeks, as the Proposed Transaction is expected to close in the second half of 2020 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, Rule 14a-9, and Delaware State law.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to resTORbio's public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' misconduct.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1331 because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. This Court also has jurisdiction over the duty of candor claim pursuant to 28 U.S.C. § 1367.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as

Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, the Company's common stock trades on the Nasdaq, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of resTORbio common stock.

12.     Defendant resTORbio is a Delaware company with its principal executive office located at 500 Boylston Street, 13th Floor, Boston, MA 02116. resTORbio's common stock trades on the Nasdaq under the ticker symbol "TORC."

13.     Defendant Chen Schor is, and has been at all relevant times, the Company's Co-Founder, Chief Executive Officer, and President.

14.     Defendant Jeffrey A. Chodakewitz is, and has been at all relevant times, a director of the Company.

15.     Defendant Paul Fonteyne is, and has been at all relevant times, a director of the Company.

16.     Defendant Michael Grissinger is, and has been at all relevant times, a director of

the Company.

17.     Defendant Jonathan Silverstein is, and has been at all relevant times, a director of the Company.

18.     Defendant David Steinberg is, and has been at all relevant times, a director of the Company.

19.     Defendant Lynne Sullivan is, and has been at all relevant times, a director of the Company.

20.     The defendants identified in paragraphs 13 through 19 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with resTORbio, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.  Background of the Proposed Transaction

21.     resTORbio, Inc. is a clinical-stage biopharmaceutical company developing innovative medicines that target the biology of aging to treat aging-related diseases. resTORbio's lead program selectively inhibits TORC1, an evolutionarily conserved pathway that contributes to the decline in function of aging organ systems.

22.     Adicet is a privately held, pre-clinical stage biotechnology company founded in 2015 to develop novel off-the-shelf universal immune cell therapies based on gamma delta T cells engineered with chimeric antigen receptors. Adicet is also focused on identifying and validating cancer specific targets derived from the intracellular proteome and then generating TCRLs directed to these cancer-specific peptide targets presented by MHC Class I complexes.

23.     On April 29, 2020, resTORbio and Adicet jointly announced the Proposed Transaction. The press release stated as follows:

**resTORbio and Adicet Bio Announce Merger Agreement to Advance Allogeneic Gamma Delta CAR-T Cell Therapy Technology**

BOSTON and MENLO PARK, Calif., April 29, 2020 (GLOBE NEWSWIRE) -- resTORbio, Inc. (Nasdaq: TORC) and Adicet Bio, Inc., a privately-held biopharmaceutical company, today announced that they have entered into a definitive merger agreement to create a combined publicly-traded biotechnology company focused on the development of Adicet's off-the-shelf allogeneic gamma delta T cell therapies for oncology and other indications. Adicet's lead candidate, ADI-001, is a gamma delta CAR-T cell therapy targeting CD20 being developed for non-Hodgkin's lymphoma. Adicet has a pipeline of differentiated pre-clinical and discovery programs leveraging its universal, off-the-shelf gamma delta CAR-T cell platform.

Under the terms of the agreement, Adicet would merge with a wholly-owned subsidiary of resTORbio in an all-stock transaction, and the equityholders of Adicet will become the majority owners (75%) of resTORbio's outstanding common stock upon the close of the merger.

"After a thorough evaluation of strategic alternatives, the Board of Directors of resTORbio believes that this merger represents the highest-potential value creation opportunity for resTORbio stockholders," commented Chen Schor, Co-Founder, President and Chief Executive Officer of resTORbio, Inc. "The combined company will leverage Adicet's scientific and product development expertise and pipeline of engineered immune cell therapeutics for cancer based on its proprietary gamma delta T cell therapy platform. We believe this transformative transaction will provide the resources for the combined company to advance multiple programs into the clinic, including Adicet's lead candidate, ADI-001, a gamma delta CAR-T cell therapy targeting CD20, and expand the pipeline in oncology and other indications."

"Adicet believes that its novel and highly productive efforts to date have generated a compelling allogeneic cell therapy platform that overcomes key challenges faced by existing CAR-T therapy," said Anil Singhal, Ph.D. President and Chief Executive Officer of Adicet Bio, Inc. "The proposed merger with resTORbio is the right next step in our trajectory, and we expect that it will provide Adicet with the resources to rapidly accelerate the development of its unique product candidates based on this platform and leverage our cGMP manufacturing process to create best-in-class therapies for patients in need."

Adicet completed an $80 million Series B financing in October 2019 and was backed by OrbiMed Advisors, aMoon2 Fund, Novartis Venture Fund, Regeneron Pharmaceuticals, Inc., Johnson & Johnson Innovation – JJDC, Inc. (JJDC), OCI Enterprises, Inc, KB Investment Co., Ltd., Consensus Business Group, SBI JI Innovation Fund, Samsung Venture Investment

Corporation, Handok, Inc., DSC Investment, Inc. and Pontifax.

In August 2016, Adicet entered into a strategic collaboration with Regeneron focused on developing next-generation engineered immune cell therapeutics using Adicet's gamma delta T cell allogeneic platform technology.

In addition to its gamma delta T cell therapy platform, Adicet also identifies and validates cancer specific targets derived from the intracellular proteome and then generates T cell receptor-like monoclonal antibodies (TCRLs) directed to these cancer-specific peptide targets presented by major histocompatibility complex (MHC) Class I complexes. These TCRLs are designed to arm CAR-modified T cells or as T cell engaging antibodies that target solid tumors.

**About the Proposed Merger**

Under the terms of the merger agreement, stockholders of Adicet will receive shares of newly issued resTORbio common stock. On a pro forma basis, Adicet equityholders are expected to own approximately 75% of the combined company and current resTORbio equityholders are expected to own approximately 25% of the combined company. The parties anticipate that the combined company's primary focus will be to advance Adicet's unique cell therapy platform. The parties anticipate that the combined company will continue the development of RTB101, resTORbio's small molecule product candidate that is a potent inhibitor of target of rapamycin complex 1 (TORC1), for a COVID-19 related indication, with clinical data expected by Q1 2021. The terms of the merger agreement contemplate that a contingent value right (a "CVR") will be distributed to resTORbio stockholders as of immediately prior to the effective time of the merger, entitling CVR holders to receive net proceeds from the commercialization, if any, received from a third party commercial partner of the product candidate RTB101. The terms and conditions of the CVRs will be pursuant to a CVR Agreement resTORbio will enter into prior to the closing of the merger (the "CVR Agreement").

Following the merger, the combined company will leverage expertise from both companies with Chen Schor to serve as President and Chief Executive Officer, Stewart Abbot, Ph.D., as Senior Vice President and Chief Operating and Scientific Officer, Francesco Galimi, M.D., Ph.D., as Senior Vice President and Chief Medical Officer, Lloyd Klickstein, M.D., Ph.D., as Chief Innovation Officer, Carrie Krehlik, as Senior Vice President and Chief Human Resource Officer and Joan Mannick, M.D., as Head of Infectious Diseases to oversee the clinical program conducted under the CVR. At closing, the combined board of directors is anticipated to consist of seven members, which will include five designated from Adicet, one

designated from resTORbio and Chen Schor, President and Chief Executive Officer. Anil Singhal will serve as an advisor to the board of directors. The company will maintain offices in Menlo Park, CA and Boston, MA.

"On behalf of the Adicet Board, we thank Anil for his service to Adicet and welcome his contributions as an advisor to the Board of Directors," said Carl Gordon, Ph.D., member of Adicet's Board of Directors.

The transaction is expected to close in the second half of 2020, subject to approvals of each company's stockholders and other customary closing conditions. Upon completion of the merger, the combined company will operate under the name Adicet Bio and is expected to trade on the Nasdaq Global Market under a new ticker symbol to be determined.

JMP Securities LLC is acting as financial advisor to resTORbio and Goodwin Procter LLP is serving as legal counsel to resTORbio. Morrison & Foerster LLP is serving as legal counsel to Adicet Bio.

24.     In order to effectuate the Proposed Transaction, the Defendants agreed to certain restrictive and preclusive deal protection devices which impede the Company's ability to obtain a better offer or terminate the agreement. For example, the Company entered into a "No Soliciation" provision which prohibits seeking a better offer for stockholders, and the termination payment under the Merger Agreement all but ensures no better offer will be forthcoming. According to the Merger Agreement, should the Company terminate, it shall have to pay Adicet $6,100,000, and so creates a steep premium for any other interested bidders. Significantly, the Board, which holds approximately 24% of the common stock, agreed to a support agreement which provides that their stock will be voted to approve the Proposed Transaction.

25.     Should the Proposed Transaction be completed, Defendants stand to be richly compensated and therefore have interests separate and distinct from that of the common stockholders. Collectively, the Individual Defendants stand to gain millions of dollars through severance packages and other financial instruments. To add insult to injury, the CEO of the Company will have the unique benefit of maintaining his position as CEO in the new combined

company post-merger.

26.     This Transaction comes in the midst of the COVID-19 pandemic, at a time when stocks throughout the world are artificially deflated due to great uncertainty and radical economic change. The Registration Statement merely provides for resTORbio's value as a liquidation asset. Piggybacking off the uncertainty of pandemic, the Proposed Transaction may inordinately compensate Adicet shareholders and reward the Individual Defendants, all at the expense of the Company's common stockholders. Therefore, it is imperative that stockholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for stockholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Transaction.

**B.  The Registration Statement Omits Certain Material Information**

27.     On June 23, 2020 Defendants authorized the filing of a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents or omits material information concerning the financial analyses conducted by JMP, information which is necessary for resTORbio's stockholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

28.     *First*, the Registration Statement fails to disclose the financial projections created by management and relied upon by JMP in creating its fairness opinion.

29.     These projections are of the utmost importance to stockholders asked to vote on the Proposed Transaction in order to determine whether the Exchange Ratio is truly fair. Indeed, JMP

"reviewed certain financial projections provided to JMP by resTORbio relating to resTORbio and Adicet" and so relied on these projections in its determination of fairness. *See* Reg. Stmt. at 177. Yet, the Registration Statement omits *any* of these projections and merely states JMP's estimated liquidation value for the Company. Stockholders have the right to know whether there was any value to be had in remaining a standalone entity, either through financing or consideration of other strategic alternatives.

30.     Therefore, the Registration Statement must disclose those projections prepared by management, including projected: (i) free cash flow; (ii) net income; (iii) EBITDA; (iv) revenue; (v) and any line-items used in the calculation of free cash flow. As well as the other relative value or merit of pursuing other strategic alternatives. As to disclosure of valuation information, projections and valuations must be complete, honest, and accurate. Indeed, Courts routinely find this information to be material, and that these financial metrics to significantly alter the 'total mix' of information made available to stockholders. Defendants have only made drastically incomplete and misleading disclosures concerning these projections. Thus, Defendants' omission renders the projections disclosed in the Registration Statement misleading.

31.     **Second**, the Registration Statement omits material information regarding the analyses performed by JMP in rendering its fairness opinion.

32.     The Registration Statement completely omits all of JMP's financial analyses concerning resTORbio, thus rendering the Registration Statement misleading incomplete. "The resTORbio Board approved the liquidation plan ***for use by JMP in conducting its financial analyses of resTORbio.***" *See* Reg. Stmt. at 169 (emphasis added). Yet, none of these analyses are included in the Registration Statement. Indeed, it appears that a discounted cash flow analysis was performed, that is entirely omitted. *See* Reg. Stmt. at 385.

33.     The Registration Statement essentially asks stockholders to assume, *without providing any reasons and without providing projections or analyses*, that the Company had no value other than its liquidation value. Stockholders are entitled to this information as a matter of law, when asked to vote on a merger.

*34.*     Furthermore, the Registration Statement omits material information concerning the financial analyses performed on Adicet. With respect to the *Adicet Selected Company Analysis*, the Registration Statement fails to disclose: (i) JMP's assumptions for selecting each of the companies observed; and (ii) the individual metrics for each company observed.

*35.*     With respect to the *Adicet Selected Initial Public Offerings Analysis*, (i) JMP's assumptions for selecting each of the companies observed; and (ii) the individual metrics for each company observed.

36.     With respect to the *Adicet Precedent Transaction Analysis*, the Registration Statement fails to disclose: (i) JMP's assumptions for selecting each of the transactions observed; and (ii) the inputs for each of the transactions observed.

37.     Fairness opinions are fundamental to the M&A process and is ultimately what stockholders rely upon in their determination to vote for or against a transaction. Unfortunately, fairness opinions are also vulnerable to manipulation, which is why it is of the utmost important that stockholders have analyses available—such as those omitted here—to determine whether those metrics are reasonable, or whether they were unreasonably selected in order to obtain a finding of fairness. In valuing transactions such as these, it becomes all the more critical. As one highly respected professor explained in one of the most thorough law review articles regarding the fundamental flaws of fairness opinions, in a financial analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final

valuation."  Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such

choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff

explains:

> There is substantial leeway to determine each of these, and any change can
> markedly affect the discounted cash flow value. For example, a change in the
> discount rate by one percent on a stream of cash flows in the billions of dollars can
> change the discounted cash flow value by tens if not hundreds of millions of
> dollars….This issue arises not only with a discounted cash flow analysis, but with
> each of the other valuation techniques.  This dazzling variability makes it difficult
> to rely, compare, or analyze the valuations underlying a fairness opinion unless full
> disclosure is made of the various inputs in the valuation process, the weight
> assigned for each, and the rationale underlying these choices. The substantial
> discretion and lack of guidelines and standards also makes the process vulnerable
> to manipulation to arrive at the "right" answer for fairness.  This raises a further
> dilemma in light of the conflicted nature of the investment banks who often provide
> these opinions.

*Id.* at 1577-78. Therefore, in order for stockholders to determine how to vote they need access to

the above information, and the omission of these metrics makes each financial analysis identified

inherently misleading.

38.     ***Third and finally***, the Registration Statement states that the Company had been

considering and possibly contacting other potential bidders. *See* Reg. Stmt. at 156. Yet, critically,

the Registration Statement only partially discloses whether the Company entered into

confidentiality agreements with other bidders, such as with Company D, and if so, whether they

contained DADW provisions. The failure to plainly disclose the existence of DADW provisions

and confidentiality agreements creates the false impression that any company could have made a

superior proposal. If there are confidentiality agreements containing DADW provisions, then those

parties could only make a superior proposal by breaching the agreement—since in order to make

the superior proposal, they would have to ask for a waiver, either directly or indirectly. Any

reasonable shareholder would deem the fact that the most likely potential topping bidders in the

marketplace may be precluded from making a superior offer to significantly alter the total mix of information.

39.     This information has been found to be material by both California and Delaware Courts. Indeed, Plaintiff's attorneys have obtained injunctions on this very issue. *See e.g., In re Integrated Silicon Solution, Inc. Stockholder Litigation Consolidated Action*, Case No. 1-15-CV-278812 (injunction granted June 16, 2015 for failure to disclose DADW restrictions). Courts have specifically ruled on this issue and held as to their materiality. For example, the Delaware Court of Chancery granted an injunction in *In re Ancestry.com Inc. S'holder Litig.*, Consol. C.A. No. 7988 (Del. Ch. Dec. 17, 2012), and held that stockholders are entitled to know about DADW clauses, that the Court was "not prepared to allow [the proposed merger] to go to a vote without the stockholders being told about [the DADW clauses]." *Id.* at 228. The Court specifically noted that, without this disclosure, the stockholders were operating under a "false impression that any of the folks who signed the standstill could have made a superior proposal. That's not true. They could only make it by breaching the standstill." *Id.*

40.     In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**(Against All Defendants for Violation of Section 14(a) of the Exchange Act)**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."  15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

44.     The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45.     Defendants have issued the Registration Statement with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction.   Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by Jefferies in support of its fairness opinion.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's stockholders although they could have done so without extraordinary effort.

47.     The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Jefferies reviewed and discussed its financial analysis with the Board, and further states that the Board considered the financial analysis provided by Jefferies, as well as the fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Jefferies' analysis in connection with their receipt of the fairness opinions, question Jefferies as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

48.     The Individual Defendants were, at the very least, negligent in preparing and

reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

49.     resTORbio is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

50.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     The Individual Defendants acted as controlling persons of resTORbio within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of resTORbio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did

influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

55.     In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these

Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## COUNT III

### (Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)

58.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Registration Statement did not omit any material information or contain any materially misleading statements.

61.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Registration Statement to be disseminated to Plaintiff and the Company's other public stockholders.

62.     The misrepresentations and omissions in the Registration Statement are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

63.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's

equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.      Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Dated: July 2, 2020                             **MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*